IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ALAN I. TZIB, on behalf of himself
and others similarly situated**                                       **PLAINTIFFS**

**VS.**                                                              **CIVIL ACTION NO.: 3:14-cv-65**

**MOORE FEED STORE, INC.**                                            **DEFENDANT**

## **ORDER**

This cause comes before the court on the motion of plaintiff Alan Tzib to conditionally certify this Fair Labor Standards Act ("FLSA") action as a "collective action" under 29 U.S.C. § 216(b). Defendant Moore Feed Store, Inc. ("Moore") has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This is an FLSA action in which plaintiff, a former Moore employee, alleges that defendant refused to pay him and other employees of the feed store for overtime work which they performed. Specifically, plaintiff contends that:

> Regardless of how many hours over forty Plaintiff works during a week, Defendant pays hourly-rate employees only at their straight time rates. Defendant also compels Plaintiff and those similarly situated to him to work off the clock, by requiring Plaintiff and similarly situated employees to work after they have clocked out at the end of their shifts. Defendant had no policy or practice through which hourly-rate employees could receive compensation for work performed after they had already clocked out for the day.

In responding to these allegations, defendant argues that plaintiff and several other similarly situated employees are (or were) actually "per day" employees, pursuant to a consensual arrangement which, defendant contends, has broad (though clearly not unanimous) support among the affected employees.

1

Plaintiff seeks recovery against defendant pursuant to § 216(b) of the FLSA, which provides that:

> [a]ny employer who violates the provisions of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages .... An action to recover the liability prescribed in [this section] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Thus, § 216(b) provides that workers may sue individually or collectively on behalf of "themselves and other employees similarly situated." The statute further provides that, to participate in a collective action, each employee must "give[ ] his consent in writing" by notifying the court of his intent to opt in.

The FLSA's "opt in" format for collective actions is in contrast to the "opt out" format applicable to Rule 23 class actions. As stated by the Fifth Circuit:

> There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA [§ 216(b)]. In a Rule 23 proceeding, a class is described; if the action is maintainable as a class action, each person within the description is considered to be a class member and, as such, is bound by judgment, whether favorable or unfavorable, unless he has "opted out" of the suit. Under [§ 216(b)] of FLSA, on the other hand, no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively "opted into" the class; that is, given his written, filed consent.

*LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286, 288 (5th Cir. 1975). It is well settled that "[d]istrict courts are provided with discretionary power to implement the collective action procedure through the sending of notice to potential plaintiffs." *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 797 (E.D. La. 2007).

At this juncture, the sole issue for this court's resolution is whether it should conditionally certify a class as part of an FLSA collective action, and there is, unfortunately,

2

some uncertainty regarding the prevailing legal standards in this regard. In a very recent order conditionally certifying a class in an FLSA action, U.S. District Judge Carl Barbier of the Eastern District of Louisiana noted that:

> Courts typically follow one of two approaches in certifying a class: the *Lusardi* or the *Shushan* approach. *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213–14 (5th Cir.1995), overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Although the U.S. Court of Appeals for the Fifth Circuit has not adopted one test over the other, district courts commonly employ the approach of *Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D. N.J. 1988). *Acevedo v. Allsup's Convenience Stores, Inc.,* 600 F.3d 516, 518–19 n. 1 (5th Cir. 2010)("[W]e have not adopted any of the varying approaches for determining whether employees' claims are sufficiently similar to support maintenance of a representative action.").

*Case v. Danos and Curole Marine Contractors, L.L.C.,* 2015 WL 1978653 (E.D. La. May, 4 2015).

In *Case*, Judge Barbier chose to follow the *Lusardi* approach, which he found to have been "commonly" applied by district courts. Judge Barbier described the *Lusardi* approach as follows:

> The *Lusardi* test comprises two stages. First, during the "notice stage," the court conducts an initial inquiry of "whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." Courts usually base this decision upon "the pleadings and any affidavits which have been submitted." Because of the limited evidence available at this stage, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." Although the standard is lenient, "it is by no means automatic." Once the court conditionally certifies the class, class counsel may provide notice to members of the putative class, who will then have the opportunity to opt in. The case then proceeds through discovery as a representative action. The second stage occurs when and if the defendant files a motion for decertification, "after discovery is largely complete and more information on the case is available." The court then "makes a final determination of whether all plaintiffs are sufficiently similarly situated to proceed together in a single action."

*Case*, slip op. at 5 (citations omitted). The Fifth Circuit has noted that, under the first part of the *Lusardi* test, "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by

3

discrimination." *Mooney v. Aramco Servs. Co.,* 54 F.3d at 1214, n. 8, *citing Sperling v. Hoffman–La Roche, Inc.,* 118 F.R.D. 392, 407 (D. N.J. 1988).

Like Judge Barbier, this court will apply the *Lusardi* test in this case, and it does seem clear that plaintiff faces a quite lenient standard in meeting the first part of that test. Indeed, defendant's own description of the facts strongly suggests that there is sufficient similarity among the employees who worked under the "per day" payment arrangement to meet the first part of the *Lusardi* test. In its brief, defendant describes this arrangement as follows:

> Prior to the time Tzib was hired by Moore's, employees with similar job duties were paid by the hour at an hourly rate of $7.00 per hour for every hour worked each week up to 40 hours, and time and one-half for every hour worked in excess of 40 hours per week. If there was not sufficient work to be done due to low customer demand or low work flow, the employees would be asked to clock out and sent home for the day. There were no guaranteed work hours per day. Work hours were dictated by customer demand and work flow.
>
> Later, at the request of these employees, and by agreement of Moore's and the employees, Moore's changed its compensation system to a guaranteed per day rate of $100.00 per day, so long as the employees worked at least ten (10) hours in a day. Thus, they were guaranteed at least 10 hours of work per day, regardless of customer demand or work flow. If they voluntarily worked less than 10 hours, then they did not receive the guaranteed $100.00 per day, and were simply compensated at $10.00 per hour for the hours they did work. Any hours worked in excess of ten (10) hours per day were compensated at $10.00 per hour. This new "per day" compensation system resulted in more pay for these Moore's employees, and was liked by the employees.

Defendant later notes that "[i]n addition to Tzib, only nine (9) other employees of Moore's were compensated under the same compensation system applicable to Tzib during the alleged relevant time frame of September 17, 2011, and September 17, 2014."

Thus, defendant concedes that it implemented a specific pay arrangement which was applicable to plaintiff and nine other employees, and this court regards this arrangement as supporting a finding that there is sufficient similarity between these ten employees to meet the

"lenient" requirements of the first part of the *Lusardi* test. In contending otherwise, defendant argues in its brief that:

> Each of these employees would have worked a different number of days and hours, and may have been paid different amounts for vacation time and periodic bonuses, which Moore's contends would serve as an offset to any claims of unpaid overtime. Further, each of these employees were employed at different times during the alleged relevant time period. Two of these employees, Liz Russell and Scotty Wilson, have already executed supporting affidavits indicating, among other things, that they do not want to join in this lawsuit. (Exhibits "B" and "C"). Another of these employees, Shanna Franklin, who is a relative of the owners of Moore's, has indicated her intent to sign such a supporting affidavit expressing that she does not want to join in this lawsuit, but was unavailable to execute the Affidavit prior to the submission of this Response. Moreover, it is expected that other such employees will express their desire not to join in this lawsuit in the form of a supporting affidavit.

The court finds defendant's arguments in this regard unpersuasive, at least at this juncture.

It appears that defendant has two primary arguments against certification, but the court concludes that each of these arguments would be better addressed in the second, rather than the first, part of the *Lusardi* approach. Defendant's first argument is that there is an insufficient number of employees who might be interested in joining this action to support certification, and it contends that "[i]ncluding Tzib, the number of employees in the putative class would likely be less than seven (7), perhaps just Tzib himself." "Perhaps" is, however, a word which this court seeks to avoid in deciding issues of this nature, since actual facts are far preferable to speculation in this regard. Moreover, defendant cites no authority indicating that there is a numerosity requirement in the FLSA collective action context comparable to that which exists in the Rule 23 class action context, and if so, what number of plaintiffs might serve to meet this requirement.[1] Regardless, it seems clear to this court that this issue is best addressed after it is first determined

---

[1]The court trusts that additional authority will be forthcoming in any future motion to decertify which defendant may choose to file. It seems possible that defendant will eventually decide not to oppose the claims of any prospective plaintiffs from being considered in the same action, so as to reduce its potential exposure to attorney's fees, both its own and those of any successful plaintiffs. This is clearly a matter within defendant's discretion, however.

exactly which employees are interested in joining this action, and conditional certification seems likely to provide this court with actual facts, rather than speculation, in this regard.

Determining the number and identity of prospective plaintiffs should likewise assist this court in addressing defendant's second main objection to certification, namely that the "per day" employees "worked a different number of days and hours and may have been paid different amounts for vacation time and periodic bonuses," thus rendering them dissimilar for certification purposes. Once again, however, defendant is unable to state exactly which, if any, plaintiffs might be interested in joining this action, and it strikes this court as being far preferable to first ascertain the facts in this regard and thereupon conduct discovery regarding the nature of their claims. In so concluding, the court notes that there are a number of representations in defendant's brief which are best addressed after discovery. For example, defendant submits that the "[per day] compensation system was agreed to by the affected employees" and it contends that "[w]hile some employees may have on occasion voluntarily assisted a customer in need after that employee had already clocked out, any such assistance would have been infrequent and incidental." It appears that establishing actual facts regarding these representations may prove to be of considerable importance in this case, but it is difficult to discern how this can be accomplished without first ascertaining the identity of the prospective plaintiffs.

The *Lusardi* approach seems likely to provide this court with facts in this regard, and it finds, as previously stated, that there exists sufficient similarity among the employees who worked under the "per day" pay arrangement to meet the first part of that approach. Indeed, the existence of the specific pay arrangement in this case appears to provide plaintiffs with a quite substantial argument for similarity, since it gives rise to common issues of both law and fact which, arguably, are best resolved in the same action. The court therefore finds that there are

"substantial allegations" that the per day employees "were together the victims of a single decision, policy, or plan infected by discrimination" within the meaning of relevant case law so as to support conditional certification. *See Mooney*, 54 F.3d at 1214, n. 8.

This court will accordingly conditionally certify a collective action in this case, although it agrees with defendant that the class of prospective plaintiffs should be limited to the employees who were subject to the "per day" salary arrangement. In his amended motion to certify, plaintiff argues that this court "should issue the notice to cover the three years from the date of filing of the Complaint," and defendant has expressed no disagreement with this argument. Defendant does raise a number of specific objections to the form of plaintiff's proposed notice, but it is unclear to what extent disagreement exists among the parties in light of this court's order today. The court therefore directs the parties to consult in good faith (with the Magistrate Judge's assistance, if necessary) to attempt to resolve their disputes regarding the form of the notice in this case. It appears that the parties should be able to reach agreement in this regard and submit an agreed notice for this court's signature, but, if this proves impossible, then this court stands ready to resolve any outstanding issues regarding the form of the notice.

It is therefore ordered that plaintiff's motion and amended motion to conditionally certify [22-1, 42-1] are granted. Defendant's motion to file supplemental exhibits [40-1] is likewise granted.

This the 21st day of May, 2015.

/s/ Michael P. Mills
U.S. DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI